IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

TAYLOR QUINN,

                      Plaintiff,

v.                                          CIVIL ACTION NO.   2:21-cv-00421

LT. CHRISTOPHER K. ZERKLE, et al.,

                      Defendants.


MARK TOON, et. al.,

                      Plaintiffs,

v.                                          CIVIL ACTION NO.   2:21-cv-00427

LT. CHRISTOPHER K. ZERKLE, et al.,

                      Defendants.


**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendants Sgt. Paxton Lively, Sgt. Rick Keglor, Deputy Brandon Kay and Deputy Jamie Miller's Motion to Dismiss* [as to Plaintiff Taylor Quinn] (Document 4 in 2:21-cv-421), *Defendants Sgt. Paxton Lively, Sgt. Rick Keglor, Deputy Brandon Kay and Deputy Jamie Miller's Memorandum of Law in Support of Their Motion to Dismiss* (Document 5), and Plaintiff Quinn's *Response in Opposition to Defendants Sgt. Paxton Lively, Sgt. Rick Keglor, Deputy Brandon Kay and Deputy Jamie Miller's Motion to Dismiss* (Document 6).

In addition, the Court has reviewed *Defendant Lt. Christopher Zerkle's Partial Motion to Dismiss* [as to Plaintiff Toon] (Document 8 in 2:21-cv-427), *Defendant Lt. Christopher Zerkle's*

1

*Memorandum in Support of His Partial Motion to Dismiss* (Document 9 in 2:21-cv-427),
*Defendants Sgt. Paxton Lively, Sgt. Rick Keglor, Deputy Brandon Kay and Deputy Jamie Miller's
Motion to Dismiss* (Document 11 in 2:21-cv-427), *Defendants Sgt. Paxton Lively, Sgt. Rick Keglor,
Deputy Brandon Kay and Deputy Jamie Miller's Memorandum of Law in Support of Their Motion
to Dismiss* (Document 12 in 2:21-cv-427), Plaintiff Toon's *Response in Opposition to Defendant
Lt. Christopher Zerkle's Partial Motion to Dismiss* (Document 15 in 2:21-cv-427), Plaintiff Toon's
*Response in Opposition to Defendants Sgt. Paxton Lively, Sgt. Rick Keglor, Deputy Brandon Kay
and Deputy Jamie Miller's Motion to Dismiss* (Document 22 in consolidated 2:21-cv-421),
*Defendant Lt. Christopher Zerkle's Reply to Plaintiff Mark Toon's Response in Opposition to
Defendant Zerkle's Partial Motion to Dismiss* (Document 23), and *Defendants Sgt. Paxton Lively,
Sgt. Rick Keglor, Deputy Brandon Kay and Deputy Jamie Miller's Reply to Plaintiff's Response
to Their Motion to Dismiss* (Document 24).

For the reasons stated herein, the Court finds that Defendants Lively, Keglor, Kay, and
Miller's motion should be granted as to Plaintiff Quinn's claim for intentional infliction of
emotional distress and as to Plaintiff Toon's official capacity claims, and denied as to all remaining
claims.  The Court also finds that Defendant Zerkle's partial motion as to Plaintiff Toon should
be granted in part and denied in part.

## FACTUAL ALLEGATIONS

Plaintiff Taylor Quinn initiated her suit in the Circuit Court of Kanawha County, West
Virginia, on or about April 20, 2020.  She named as Defendants Lt. Christopher K. Zerkle, the
West Virginia State Police, Sgt. Paxton Lively, Sgt. Rick Keglor, Deputy Brandon Kay, Deputy
Jamie Miller, and the Kanawha County Commission.  In her *Amended Complaint* (Document 1-

2

3), filed on or about July 19, 2021, she eliminated the claims against the West Virginia State Police and the Kanawha County Commission.   The Defendants removed the matter to federal court on July 28, 2021.

Plaintiff Mark Toon, as Personal Representative of the Estate of Eric Toon, filed his complaint on July 30, 2021, naming the same Defendants as Ms. Quinn.   On September 7, 2021, the Court entered a *Memorandum Opinion and Order* (Document 13), granting a motion to consolidate the two actions.   Because the two complaints arose from the same incident and contain overlapping factual and legal claims, the Court will summarize the factual allegations jointly, making note of those allegations contained in only one of the complaints.

On August 1, 2019, Defendant Zerkle responded to a call, unrelated to Mr. Toon, in his unmarked cruiser and was parked, partially blocking a road, without his lights flashing.   Mr. Toon and another person passed on a motorcycle.   According to the Toon Complaint, Defendant Zerkle allegedly indicated that Mr. Toon extended his middle finger as he passed.   Defendant Zerkle falsely claimed that Mr. Toon hit the left front tire of his cruiser and did not stop.   Defendant Zerkle initiated a high-speed chase through Charleston and onto the interstate.   Mr. Toon returned to the residence he shared with Ms. Quinn at 116 Lotus Drive and went to bed.   No officers were present or in immediate pursuit when he arrived at the residence.   Sometime later in the morning, approximately fourteen officers arrived in the area.   One officer who responded to the residence indicated that the earlier pursuit had been cancelled.   A witness informed an officer that Mr. Toon lived in a yellow trailer with a wood deck down the street, which officers identified as 116 Lotus Drive.   An officer found a motorcycle, helmet, and cell phone near the residence.   Although a canine officer previously had not alerted in the area, the dog subsequently signaled a "hit" based

3

on the helmet and cell phone.   According to the Toon Complaint, "nearly an hour" had passed between the time that Defendant Zerkle initiated the chase and the time officers took possession of the motorcycle.   (Compl. at ¶ 26) (Document 1 in 2:21-cv-427.)

Defendant Miller decided that the officers "had enough to try and make entry."   (*Id.* at ¶ 28; Quinn Compl. at ¶ 25.)   Defendants Kay, Keglor, Lively, and Miller, together with the K-9 officer, breached the front door and made entry, without a warrant and without announcing themselves as law enforcement.[1]   Defendant Zerkle remained outside the residence a short distance away, watching.   Mr. Toon jumped out a window armed with a rifle and landed on the ground, where Defendant Zerkle shot him twice, killing him.   Ms. Quinn followed him out the window unarmed, and Defendant Zerkle shot her as well.[2]   She suffered serious injuries requiring extensive hospitalization and has permanent injuries to her shoulder and nerve damage.

The Toon Complaint contains the following claims: Count I: 42 U.S.C. § 1983 - Retaliation and Use of Excessive Force in Violation of the 1st Amendment of the United States Constitution, as to Defendant Zerkle; Count II: 42 U.S.C. §1983 - Violation of the 4th Amendment of the United States Constitution: Warrantless Entry and Excessive Force, as to Defendants Kay, Keglor, Lively, Miller, and Zerkle;[3] Count III: 42 U.S.C. § 1983 - Failure to Intervene in Violation of the 4th Amendment of the United States Constitution, as to Defendants Kay, Keglor, Lively, Miller, and

---

1 The Quinn complaint does not contain an allegation stating that the officers failed to announce.  It indicates that the officers entered without a warrant, that they flushed the Plaintiffs out through the window, and that Ms. Quinn was in fear for her life.

2 The Toon complaint does not contain allegations regarding Ms. Quinn's shooting or injuries.

3 Although the title for Count 2 includes Defendant Zerkle, the allegations contained therein reference only Defendants Kay, Keglor, Lively, and Miller.  For example, Paragraph 50 of the Toon Complaint alleges that "Defendants Kay, Keglor, Lively, and Miller were acting under color of law when they forcibly entered Eric Toon's home without a warrant."  (Toon Compl. at ¶ 50.)  Paragraph 62, the final paragraph within the section for Count 2, alleges: "These actions of Defendants Lively, Keglor, Kay, and Miller violated Eric Toon's constitutional rights, including, but not limited to, the right to be free from unreasonable searches and seizures and the right to due process…"  (*Id.* at ¶ 62.)

4

Zerkle; and Count IV: 42 U.S.C. § 1983 - Violation of the 4th Amendment of the United States Constitution: Excessive Force, as to Defendant Zerkle.   The Quinn amended complaint alleges the following claims: Count I: 42 U.S.C. §1983 – Violation of the 4th Amendment of the United States Constitution: Excessive Force, as to Defendant Zerkle; Count II: 42 U.S.C. § 1983 – Violation of the 4th Amendment of the United States Constitution: Warrantless Entry, as to Defendants Lively, Keglor, Kay, and Miller; Count III: Battery, as to Defendant Zerkle; Count IV: Trespass, as to Defendants Lively, Keglor, Kay, and Miller; and Count V: Extreme and Outrageous Conduct; Emotional Distress, as to Defendants Lively, Keglor, Kay, and Miller.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.   *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid

of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal,* 556 U.S. at 679.

6

**ARGUMENTS**

Defendants Lively, Keglor, Kay, and Miller (the Kanawha Deputies) argue that their entry into the residence did not violate the Fourth Amendment because they were in hot pursuit of Mr. Toon, who they had been informed had struck a police cruiser, prompting a high-speed chase. Although they recognize that the Plaintiffs contend that Defendant Zerkle fabricated the claim that Mr. Toon had struck his cruiser, they argue that they acted properly based on the information they were provided at the time. According to the Kanawha Deputies, "[b]ased on the underlying crimes that were committed in Trooper Zerkle's presence that were thereafter communicated to the deputies, the immediate hot pursuit of Mr. Toon to the area around the residence, and the K9 alert at the front door of the residence, the deputies' warrantless entry into the residence to apprehend Mr. Toon was not in violation of the Fourth Amendment." (Document 5 in 2:21-cv-421 at 10.) They contend that precedent from the West Virginia Supreme Court of Appeals establishes that warrantless entry into a residence after searching the vicinity for around an hour is permissible. Even if the Court finds that the entry does constitute a Fourth Amendment violation, they argue that they are entitled to qualified immunity because "there is no federal case law or case law in West Virginia that clearly establishes that these deputies violated Ms. Quinn's constitutional rights in entering the residence without a warrant under the facts and circumstances of this case." (*Id.* at 12.) In addition, the Kanawha Deputies argue that Plaintiff Quinn's amended complaint does not establish that their actions caused her injuries, because she was shot by other officers while attempting to flee through a window, and the existence of a warrant would have had no impact. Further, they argue that the trespass claim should be dismissed because they were

7

privileged to enter the residence as law enforcement officers in pursuit of a suspect.   Finally, they argue that the amended complaint does not plead sufficient facts to support the tort of outrage.

In response, Ms. Quinn argues that Supreme Court precedent establishes that warrantless entry during pursuit requires *continuous* pursuit and violates the Fourth Amendment where the pursuit was not continuous.   She further argues that any threat to public safety was neutralized because officers could control the motorcycle that Mr. Toon was alleged to have used to strike Defendant Zerkle's vehicle, eliminating access to the instrument of his alleged crimes.   She contends that the cases the Kanawha Deputies rely upon to argue that a constitutional violation was not clearly established are distinguishable, while clear precedent closely aligns with the facts presented herein.   She argues that her escape through the window, prompted by her fear for her life upon the warrantless entry of these Defendants, was reasonably foreseeable.   She further counters their assertion that their entry was privileged, arguing that warrantless entry is presumptively unreasonable, and no exception applied under the facts alleged.   Finally, she asserts that she alleged conduct by these Defendants that violates norms of acceptable conduct, and those allegations suffice to state a claim for the intentional infliction of emotional distress.

The Kanawha Deputies also move to dismiss Plaintiff Toon's complaint based on similar arguments that the entry and search were justified, that they are entitled to qualified immunity, and that Defendant Zerkle's shooting of Mr. Toon when he exited the house through a window with a gun was not a foreseeable result caused by their entry to the home.   They further argue that the bystander liability claim contained in Count III should be dismissed because the entry did not constitute a violation of a clearly established constitutional right such that officers present should have known that officers were violating Mr. Toon's constitutional rights.   Finally, the Kanawha

8

Deputies argue that the Toon complaint does not contain factual allegations to support a *Monell* claim against them in their official capacities.

Plaintiff Toon concedes that the official capacity claims as to the Kanawha Deputies should be dismissed.   Plaintiff Toon, like Ms. Quinn, argues that no exception to the warrant requirement applies to the facts alleged, and the entry and search were unlawful.   He argues that clearly established precedent precludes the claim of qualified immunity.   He further argues that his exit through the window and the subsequent shooting were foreseeable effects caused by the warrantless entry, and indeed that the Defendants intended to flush the residents of the home out through the window.   Finally, he contends that his bystander liability claim should survive because he has adequately alleged that the officers violated his clearly established rights, and no officers present intervened despite observing those violations.

Defendant Zerkle moves to dismiss Plaintiff Toon's claims against him in his official capacity, duplicative claims, and, to the extent the Court finds that the Kanawha Deputies' search was reasonable, he seeks dismissal of Counts II and III related to the alleged warrantless entry. He argues that he is not a "person" in his official capacity for purposes of 42 U.S.C. §1983.   He argues that he cannot be held liable for the warrantless entry or search of the residence because, accepting the factual allegations in the complaint as true, he remained outside the home while other officers entered.   Finally, he argues that if the Court grants the Kanawha Deputies' motions to dismiss and concludes that the entry and search were reasonable, the claims for warrantless entry and search and failure to intervene against him should likewise be dismissed.

Plaintiff Toon argues that Defendant Zerkle acted in concert with the Kanawha Deputies in their search of the residence and was "the moving force animating the warrantless entry."

(Toon Resp. at 4, Document 15 in 2:21-cv-427.)   He contends that Defendant Zerkle and the Kanawha Deputies all intended that Mr. Toon "be 'flushed out' of the residence via the rear bedroom window where Defendant Zerkle was waiting."   (*Id.*)   He further argues that the underlying search was unconstitutional and urges the Court to reject the motion to dismiss Counts II and III as to Defendant Zerkle based on Defendant Zerkle's expectation that the Kanawha Deputies will successfully move to dismiss those claims.

## DISCUSSION

### A.  Warrantless Entry – Kanawha Deputies

The Fourth Amendment protects people, and their "houses, papers, and effects" against "unreasonable searches or seizures."   U.S. Const. amend. IV. "As that text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.''"   *Lange v. California*, 141 S. Ct. 2011, 2017 (2021) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).   Intrusions into private residences are subject to particular scrutiny, and "searches and seizures inside a home without a warrant are presumptively unreasonable."   *Payton v. New York*, 445 U.S. 573, 586 (1980).   The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest."   *Id.* at 576. However, "the warrant requirement is subject to certain exceptions."   *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

"One important exception is for exigent circumstances."   *Lange*, 141 S.Ct. at 2017.   The exception is "case specific," requiring courts to examine the circumstances to determine "whether a now or never situation actually exists" to justify a warrantless search.   *Id.* at 2018.   The Supreme Court has established that "hot pursuit" can be a type of exigent circumstance justifying

10

warrantless entry into a residence.   In *United States v. Santana*, the Court held that a suspect's "act of retreating into her house" could not "thwart an otherwise proper arrest" where police initiated the arrest in public, finding officers justified in pursuing her into the home and conducting a search of her person incident to arrest.   427 U.S. 38, 42 (1976).   The Court further reasoned that warrantless entry could be necessary in cases of hot pursuit because of the related concern that the suspect who fled into a residence would destroy evidence if officers delayed entry while obtaining a warrant.   *Id.* at 43.   However, the Supreme Court later rejected a hot-pursuit justification for warrantless entry when "there was no immediate or continuous pursuit of the petitioner from the scene of a crime," where police responded to a call regarding a possibly intoxicated driver and found that he had abandoned his vehicle and walked home.   *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

The seriousness of the crime at issue must also be considered.   The Supreme Court recently held that:

> The flight of a suspected misdemeanant does not always justify a warrantless entry into a home. An officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency. On many occasions, the officer will have good reason to enter—to prevent imminent harms of violence, destruction of evidence, or escape from the home. But when the officer has time to get a warrant, he must do so—even though the misdemeanant fled.

*Lange v. California*, 141 S. Ct. 2011, 2024 (2021); *see also United States v. Anderson*, 688 F.3d 339, 344 (8th Cir. 2012) (explaining that *Welsh* established two factors to consider "in determining whether 'hot pursuit' creates an exigency: (1) the gravity of the underlying offense, and (2) whether the government can demonstrate an 'immediate or continuous' pursuit of the suspect from the scene of the crime").

The alleged offense that brought officers to Mr. Toon's door was hitting the tire of a police cruiser with his motorcycle, causing no damage, followed by fleeing officers.[4]   While potential charges might not be limited to misdemeanor offenses, there is no particularly serious crime at issue.   Officers had located Mr. Toon based on a tip from a neighbor, a K-9, and the motorcycle and other objects outside the residence.   The only evidence at issue, the motorcycle, was likewise outside the residence with the officers.

The Plaintiffs have alleged that the pursuit was not continuous.   They allege that there was a pause or cancellation of the pursuit between the high-speed chase and the officers appearing at their residence.   At this stage, the Court must accept the factual allegations contained in the complaints as true.   Based on the facts alleged, the officers pursued Mr. Toon, then gave up the chase before performing additional investigation to identify his residence.   These facts stand in contrast to those in *United States v. Jones*, in which the Fourth Circuit found exigent circumstances based in part on hot pursuit.   204 F.3d 541 (4th Cir. 2000).   There, an officer observed a drug transaction, ordered the suspect to stop as he approached the door to a residence, and entered without consent after the suspect went inside and slammed the door closed.   *Id.* at 543.   *Stanton* likewise involved an immediate pursuit into a residence, reasoning in part that a suspect should not be permitted to evade an arrest initiated outside simply by entering a home.   Here, there was a gap in both time and place between the pursuit and the warrantless entry.   Given the facts alleged, the officers were no longer in hot pursuit when they arrived at the residence to arrest Mr. Toon and/or conduct a search.

---

4 Although the Kanawha Deputies were, as they point out, reliant on Defendant Zerkle's report of the initial incident, experience and common sense would generate some level of skepticism about the seriousness of a vehicle accident in which a motorcycle hit a police cruiser with no damage to either vehicle, given the physics of motorcycle riding.

Absent a genuine hot pursuit, the Kanawha Deputies do not assert that the facts alleged would support a finding of exigent circumstances. They do not suggest that there was a risk of destruction of evidence, violence or harm to others, or escape. They do not identify any harm that would have resulted from the delay in entry necessitated by obtaining a warrant. Therefore, the Court finds that the warrantless entry, accepting the factual allegations as true, violated Ms. Quinn and Mr. Toon's Fourth Amendment right to be free from unreasonable searches and seizures.

## B.  *Qualified Immunity – Kanawha Deputies*

Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.) The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff…." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted). Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."[5]   *Id.*   The reasonableness analysis is objective.   Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident."   *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994).   "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are."   *Id.* at 173.

The Defendants rely in part on *Stanton v. Sims*, in which the Supreme Court found that officers were entitled to qualified immunity where they entered a home in hot pursuit of a suspect for a misdemeanor.   571 U.S. 3, 5–6 (2013).   The Court reasoned that the law on whether entry in hot pursuit of a person suspected of a misdemeanor constituted exigent circumstances justifying failure to obtain a warrant was so unsettled that an officer could not be held liable.   *Id.*   The Court in *Lange* subsequently clarified the standard for officers in hot pursuit of individuals suspected of misdemeanors.   However, the issue presented here is not about whether Mr. Toon's offense was serious enough to permit warrantless entry during hot pursuit, but about whether the officers were, in fact, in hot pursuit.   The lower court in *Stanton* had relied in part on *Welsh* in refusing to grant qualified immunity, and the Supreme Court in *Stanton* distinguished *Welsh* on the grounds that the *Welsh* Court had found that there was no hot pursuit based on the facts.

---

5 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'"   *Smith v. Ray*, 781 F.3d 95, 106, n. 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

The Plaintiffs here have likewise alleged facts that do not constitute hot pursuit. "[E]xceptions to the warrant requirement are few in number and carefully delineated, and…the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984) (internal quotation marks and citation omitted). "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Id.* at 750.

The Kanawha Deputies ask this Court to find that the doctrine of qualified immunity essentially negates the presumption that a warrantless home entry is unreasonable absent specifically delineated exceptions. Instead of requiring a warrant absent exigent circumstances established through precedent, they suggest that if the Plaintiffs are unable to identify precedent finding warrantless entry unconstitutional in the specific factual scenario presented, they are entitled to qualified immunity for entering a home without a warrant. But the law is quite clear that warrantless entry is presumptively unreasonable, absent a few specific exceptions. If the facts alleged do not fit within one of those exceptions to the warrant requirement, it is "beyond debate" that a warrant is required for law enforcement officers to enter a private residence. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate" to deny qualified immunity).

No reasonable officer would believe that he was in hot pursuit of a suspect given the facts known to the officer prior to arrival at the Plaintiffs'' residence. The Kanawha Deputies have not put forward any other purported exigent circumstances justifying the warrantless entry, and the

facts alleged would not support a finding that an officer "consider[ing] all the circumstances" could reasonably "determine…there [was] a law enforcement emergency" such that he did not have "time to get a warrant."  *Lange v. California*, 141 S. Ct. 2011, 2024 (2021).   The Constitutional right to be free from unreasonable searches and seizures, including warrantless entry into homes absent exigent circumstances, is well established.   Accordingly, the Court finds that the Kanawha Deputies are not entitled to qualified immunity based on the facts alleged in the complaints.

### C.  Causation – Kanawha Deputies

The Kanawha Deputies argue that damages from the shooting as Mr. Toon and Ms. Quinn escaped the house through a window are not sufficiently causally connected to their warrantless entry.   "Damages awarded under § 1983 for violations of constitutional rights are ordinarily governed by common law tort principles," including proximate causation.  *Kane v. Lewis*, 604 F. App'x 229, 234–35 (4th Cir. 2015) (unpublished).   However, nominal damages are available for Constitutional violations, and should they prove their case with regard to the warrantless entry claims, the Plaintiffs would be able to recover "for injuries proximately caused *by the warrantless entry*."  *Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1548 (2017) (emphasis in original). The potential *scope* of damages does not render the legal claims for the alleged Constitutional violation subject to dismissal, and the Court declines the opportunity to evaluate the scope of damages at this early stage.

### D.  Trespass – Quinn Complaint

The Kanawha Deputies seek to dismiss the trespass claim on the grounds that they were privileged to enter the residence.   Given the Court's previous findings regarding the Fourth Amendment claim, the Court finds that the motion to dismiss for trespass should be denied.

E.   *Tort of Outrage – Quinn Complaint*

In West Virginia, the tort of outrage, or intentional infliction of emotional distress, follows the Restatement of Torts (Second):   "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."   Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982).   The West Virginia Supreme Court has established the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008).   The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."   Syl. pt. 4, *id.*

Courts have struggled to determine whether conduct may reasonably be considered outrageous.   *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991) (reviewing several cases considering the question).   Plaintiffs must make a showing that "the defendant's actions toward the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" and be viewed as intolerable in a civilized society.   *Travis*, 504 S.E.2d at 425. "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct.   On the other hand, outrageous conduct can

17

include physical violence that causes bodily harm and emotional distress." *Courtney*, 413 S.E.2d at 423–424 (internal citations removed).

Plaintiff Quinn alleges that the Kanawha Deputies surrounded her home and entered without a warrant in search of Mr. Toon.   They had reason to believe that Mr. Toon had committed criminal offenses, including leading officers on a high-speed chase.   Accepting the allegations as true, no exigent circumstances justified the failure to obtain a warrant.   However, the Court cannot find that the entry into Plaintiff Quinn's home without a warrant, under the circumstances alleged here, could reasonably be considered "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" such that it supports a claim for intentional infliction of emotional distress.   Therefore, the motion to dismiss will be granted as to Count V of Plaintiff Quinn's amended complaint.

### F.   Bystander Liability – Toon Complaint as to Kanawha Deputies

The Kanawha Deputies further move to dismiss Mr. Toon's claim for bystander liability, arguing that there was no Constitutional violation for officers to observe so no liability was triggered.   Given the Court's previous findings with regard to the warrantless entry and qualified immunity, the Court finds that the motion to dismiss Plaintiff Toon's bystander liability claim should be denied.

### G.   Official Capacity – Toon Complaint as to Kanawha Deputies

Plaintiff Toon concedes that the claims against the Kanawha Deputies in their official capacity are subject to dismissal.   The Kanawha Deputies will be dismissed from claims in their official capacities.

18

*H.  Defendant Zerkle's Motion as to Plaintiff Toon*

Defendant Zerkle moves to dismiss claims against him in his official capacity.  Because the Plaintiff has not pled facts supporting an official capacity claim and did not respond to the motion to dismiss to the extent it sought dismissal of official capacity claims, the Court finds that Defendant Zerkle should be dismissed in his official capacity.

Defendant Zerkle also seeks dismissal of claims related to the warrantless entry because he did not enter the home, the allegations do not refer to any actions by him and based on the arguments presented by the Kanawha Deputies.  The Court finds that Count II, alleging Fourth Amendment violations for warrantless entry should be dismissed as to Defendant Zerkle.  If Plaintiff Toon intended to include Defendant Zerkle in Count II, the language of the Complaint does not make that intent clear.  Although Defendant Zerkle is included in the header for that count,[6] none of the substantive allegations include him, instead listing Defendants Kay, Keglor, Lively, and Miller repeatedly as the individuals responsible for violating the Plaintiff's rights by unlawfully entering the home.  Thus, Count II does not fairly put Defendant Zerkle on notice as to the allegations against him for Fourth Amendment violations for warrantless entry.

Count III then alleges bystander liability for failure to intervene, including specific allegations regarding Defendant Zerkle's knowledge of the unlawful search and seizure and duty to intervene.  Defendant Zerkle moves to dismiss Count III if the Court, in considering the Kanawha Deputies' motions, should find the underlying search and entry to be constitutional.  As the Court found that the Plaintiffs' allegations, if proven, would constitute clear violation of the

---

6 The Court notes that the header for Count II also indicates that it contains claims for both warrantless entry and excessive force, but the substantive allegations relate only to warrantless entry.  Count IV then contains substantive allegations for excessive force.

well-established Constitutional right to be free from warrantless entry into a residence absent exigent circumstances, Defendant Zerkle's motion to dismiss Count III should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendants Sgt. Paxton Lively, Sgt. Rick Keglor, Deputy Brandon Kay and Deputy Jamie Miller's Motion to Dismiss* [as to Plaintiff Taylor Quinn] (Document 4 in 2:21-cv-421) be **GRANTED** as to Count V and **DENIED** as to all remaining counts, and that *Defendants Sgt. Paxton Lively, Sgt. Rick Keglor, Deputy Brandon Kay and Deputy Jamie Miller's Motion to Dismiss* [as to Plaintiff Toon] (Document 11 in 2:21-cv-427) be **GRANTED** as to the official capacity claims and **DENIED** as to the individual capacity claims.   The Court further **ORDERS** that *Defendant Lt. Christopher Zerkle's Partial Motion to Dismiss* [as to Plaintiff Toon] (Document 8 in 2:21-cv-427) be **GRANTED** as to the official capacity claims, **GRANTED** as to Count II, and **DENIED** as to Count III.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      December 20, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA